[Sac. No. 1160.    Department Two.—September 30, 1905.]

BANK OF VISALIA et al., Respondents, and HOLT MANUFACTURING COMPANY, Appellant, v. DILLONWOOD LUMBER COMPANY, Respondent, A. J. DE LANEY, as Trustee and Individually, Appellant, and GEORGE M. PERINE, Appellant.

TRUST FOR BENEFIT OF CREDITORS—PRIOR MANAGEMENT OF CORPORATE BUSINESS—TRUSTEE AS CREDITOR.—Where one who afterwards became the trustee of a corporation for the benefit of its creditors, did, at the instance of stockholders, prior thereto, undertake the control of its business, under a salary as its agent and manager, for the purpose of financing the business and making it profitable, and

while so doing made advances to the corporation, he was not then acting as trustee, though designated as such, and became a general creditor of the corporation as to his salary and advances, except as to creditors expressly agreeing to give him a preference under the trust.

ID.—CONTRACT FOR PREFERENCE—PARTIES NOT BOUND.—Where the principal creditors agreed to give the trustee a preference over themselves respecting his prior salary and advances, they could only bind themselves by the agreement; and creditors not acquiescing therein, including laborers and supply men, who had no notice of the trust, or of such agreement, cannot be affected by the agreement, though made in pursuance of the trust agreement.

ID.—PREFERENCE OF LABORERS—CONSTRUCTION OF CODE.—Section 1204 of the Code of Civil Procedure, relating to the preference of laborers in an amount not exceeding one hundred dollars, who have performed labor within sixty days prior to any assignment by a creditor unable to pay his debts, applies to all such assignments, and is not limited to assignments made in insolvent proceedings or assignments made under the terms of section 344 et seq. of the Civil Code.

ID.—PREFERENCES UNDER TRUST—EFFECT UPON TRUSTEE AS CREDITOR.— Where the trust agreement provides a preference of persons performing labor and furnishing supplies thereunder, they have a preference over all general creditors, including the claim of the trustee for salary and advances which accrued in his favor prior to the trust.

ID.—LIMITATION OF SALARY OF TRUSTEE.—The court properly limited the allowance of an agreed salary of the trustee under the trust for the conduct of the business to such time as he was engaged in the conduct thereof.

ID. — ALLOWANCE FOR EXPENDITURES — PRESUMPTION UPON APPEAL. — Where the court made an allowance to the trustee for expenditures in the absence of a showing in the record to the contrary, it will be presumed upon appeal that the allowance was for all expenditures to which he was entitled.

ID.—ACTION TO WIND UP TRUST—WAIVER OF OBJECTIONS TO COMPLAINT— STIPULATION FOR SALE AND DISTRIBUTION.—In an action by creditors of the corporation to enforce their claims under the trust, to remove the trustee, and to wind up the trust, all objections to the sufficiency of the complaint not urged in the court below were waived by a stipulation of all parties conferring power upon the court to sell the trust property, to pay a fixed sum to a designated creditor, and to distribute the residue to the parties entitled thereto; and objections to the complaint cannot be urged upon appeal for the first time by a party to such stipulation.

ID.—EFFECT OF MORTGAGE—CONSTRUCTION OF TRUST—"BUSINESS"— "PROPERTY"—CLASSES—PREFERENCE.—In considering the validity and effect of a mortgage of personal property by the trustee to secure a creditor who had advanced money prior to the trust, and

had been preferred over principal creditors by their agreement, the mortgage being both for such prior advances and for further advances to carry on the business, it does not appear that the mortgage is a wholly preferred claim over claims of laborers and supply men, because of the use of the word "business" in a clause of the trust agreement referring to preferential claims for expenses, and of the word "property" in a clause referring to the general creditors. The use of such terms does not show two distinct classes of trusts so as to limit the claims of laborers and supplymen to the "business" only, where taking into consideration the general context those words appear to be used as of interchangeable meaning.

ID.—POWER TO MORTGAGE PROPERTY — VOID PROVISION PREFERRING CREDITOR.—The authority of the trustee to mortgage the trust property is confined to the terms of the trust agreement. Power to mortgage the property transferred, to carry on the sawmill and lumber business, and to pay the indebtedness to the general creditors does not include the power to secure any such creditors, or to give to any creditor a preference over persons who are preferred by the terms of the trust, and in so far as it purports to prefer such creditor, by securing him, the mortgage is to that extent void.

ID.—PREFERENCE OF LABORERS OVER MORTGAGEE—STOCKHOLDERS—CROSS-COMPLAINT.—Where some of the persons preferred as laborers over a mortgagee were stockholders in the defendant company, the mortgagee cannot claim a preference over them by reason of that fact, in the absence of a cross-complaint showing some ground for relief against them, under which the liability of the stockholders and the rights of the mortgagee against them could have been determined.

ID.—ALLEGED CONTRACT FOR USE OF ENGINE—PLEADING—FINDING—ISSUE ACTUALLY TRIED.—Where the plaintiff appellant alleged indebtedness in a specified sum for the use of a traction engine by the corporation and its trustee, and did not allege any indebtedness based upon the reasonable value of such use, and the case was actually tried upon the theory of a contract to pay therefor one dollar per thousand feet for lumber hauled by the engine, the finding of the court that no such contract was made was responsive to the issue actually tried, and where the evidence sustains the finding the judgment against such plaintiff will not be disturbed.

APPEALS by several parties from a judgment of the Superior Court of Tulare County and from orders denying a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Stanton L. Carter, Maurice E. Power, Samuel Rosenheim, and E. T. Cosper, for Appellants.

Charles G. Lamberson, Roth & McFadzean, Hudson & Prior, Dixon L. Phillips, and H. P. Brown, for Respondents.

LORIGAN, J.—This action was brought by various creditors of the Dillonwood Lumber Company, a corporation, to enforce their claims against the property of the corporation, all of which it had assigned to the defendant A. J. De Laney as a trustee for their benefit. The complaint charged that the trustee had failed to comply with the terms of the trust, and that certain of his acts were in violation of its provisions, and asked that they be declared void, that he be removed and a new trustee appointed, that the trust property be sold and the proceeds applied to the payment of the debts of the Dillonwood Lumber Company in the order and preference that the court might deem proper. The trust agreement, under the provisions of which the merits of the several appeals taken by appellants are to be determined, was executed by the Dillonwood Lumber Company and A. J. De Laney on June 19, 1901. After reciting that the company had that day conveyed to De Laney its real and personal property, it was agreed and declared that the said De Laney held all said property in trust for the following uses and purposes: "The said A. J. De Laney is to conduct and carry on the saw mill and lumber business of said Dillonwood Lumber Company, in said county of Tulare, as trustee, and from said business said A. J. De Laney is to first pay the running expenses thereof and all other necessary expenses, including necessary counsel fees, and from said property, or the product thereof, said A. J. De Laney is to pay, as soon as he can, the present indebtedness of said Dillonwood Lumber Company, . . . as shown by the books of said Dillonwood Lumber Company; and said A. J. De Laney shall have the right and power to sell any and all of said real and personal property to carry on and conduct said business and to pay said indebtedness, and may mortgage, hypothecate, and otherwise deal with or dispose of said property, or any part thereof, in any manner and to any extent he may elect, for any or all of said purposes, except as otherwise herein provided; and, upon said debts being paid in full, said A. J. De Laney shall reconvey to said Dillonwood Lumber Company any and all of the property he may then hold belonging to

said corporation; . . . and provided, further, that said Dillonwood Lumber Company may terminate this trust upon paying off such indebtedness or the amount thereof due, or causing the same to be paid, together with all expenses incurred by said A. J. De Laney as aforesaid, and shall thereupon be entitled to a reconveyance of all said property then held by said A. J. De Laney. Said A. J. De Laney . . . shall carry on and conduct said business in a businesslike manner, and shall be allowed for his compensation as part of the necessary expenses thereof the sum of $150 per month and necessary traveling expenses during the existence of this trust. It is expressly agreed and understood that the principal present debts of said corporation shall be paid in the order and manner to be agreed upon by the principal creditors of said corporation; said principal creditors being the following named, to wit: Bank of Visalia, Fresno Agricultural Works, O. R. Cross & Company, Central Lumber Company, G. M. Perine, C. A. Canfield, and A. J. De Laney. And, in case said creditors do not agree within 10 days after said creditors shall have been notified of this trust, then said A. J. De Laney shall determine the order and manner of the payment of such debts. . . . And it is further agreed and understood that said A. J. De Laney shall not sell or have the power to sell any of said real property or any of said personal property constituting the plant necessary to carry on and conduct said sawmill and lumber business without the consent of said Dillonwood Company. And it is further agreed and understood that said A. J. De Laney, as such trustee, shall carry on and conduct said sawmill and lumber business as herein provided in the name of the said Dillonwood Lumber Company, by said A. J. De Laney, trustee.''

Within ten days after the execution of said trust agreement, the principal creditors, with the exception of G. M. Perine, entered into the written agreement provided for under said trust, whereby they agreed that the indebtedness due to each of them should be paid *pro rata*, except that the claim of G. M. Perine for three thousand dollars and interest and the claim of A. J. De Laney for forty-two hundred dollars and interest should be paid in preference to the claims of said parties entering into said trust agreement; and said parties in writing ratified and accepted said agreement of trust. The defendant

G. M. Perine had at all times full knowledge of the execution of the trust agreement, assented thereto, and agreed to the terms and conditions thereof. This trust agreement, although executed on June 19, 1901, was not recorded till September 3, 1901; but from the time of its execution up to the commencement of the action said De Laney acted as trustee under its provisions.

The Dillonwood Lumber Company was engaged in the business of manufacturing and selling lumber in Tulare County during the years 1890 and 1891, operated a sawmill for that purpose, and was the owner of a large amount of real and personal property used in connection with its business. This was all transferred to A. J. De Laney, as trustee, for the purposes of the trust. Prior to the trial of the cause, by stipulation entered into by the parties to the action, all of the property of the corporation referred to in the trust conveyance was sold by order of the court and the proceeds placed under its control, to be distributed in favor of the parties to the action found entitled thereto. These parties (a large number, and all creditors of the corporation) embraced mainly persons who had performed labor or furnished supplies for the corporation before or during the time De Laney was trustee, together with the principal creditors specially mentioned in the trust agreement and the creditors' agreement entered into subsequent thereto. In ultimately disposing of the cause, it was found that the fund derived from the sale of the corporate property would be inadequate to pay all the allowed claims of the creditors, and the court determined that certain of them were entitled to preferential payments. It was found that some of the plaintiffs had performed labor for the corporation within sixty days prior to the assignment of the property to De Laney as trustee, and as to them decreed that they were entitled, under the provisions of section 1204 of the Code of Civil Procedure, to first preferential payment. It was also found that while the defendant De Laney was operating the lumber mill of the corporation under the terms of the trust certain other plaintiffs performed labor for or furnished necessary supplies to him as trustee, and decreed that they were entitled, under the terms of the trust agreement, to next preferential payment. As to the other plaintiffs, the court found that they were

ordinary creditors, with no preferential rights. As to the defendant and appellant A. J. De Laney, De Laney asserted a preference in the case above all the other creditors for four thousand two hundred dollars, the amount mentioned in the agreement entered into between himself and the principal creditors subsequent to the execution of the trust agreement. This the court denied, giving him preference only as against the other creditors who with himself had entered into such agreement giving him a preference over them. The effect of this was to deny him any participation in the fund which had then become exhausted by the prior preferences. De Laney made claim to other preferences, which were denied. The court also refused to allow him the full amount of compensation claimed as trustee, and, it is further claimed, failed to allow him other amounts to which he was entitled, on account of all of which matters he complains on this appeal, and they will be particularly considered presently. As to the defendant and appellant George M. Perine, the court found that De Laney, as trustee, had given a mortgage on the trust property to said Perine to secure an indebtedness due from the Dillonwood Lumber Company; that as to a portion of such indebtedness the court found Perine was not entitled to any preference under the trust agreement; and that De Laney had no authority to make the mortgage to secure it, and to that extent decreed such mortgage to be void. Perine complains of the findings and decree in this respect. As to the plaintiff and appellant the Holt Manufacturing Company, the court found against it as to a portion of its claim, and it appeals for that reason. All the appellants moved for a new trial, which was denied, and they appeal from the order of denial and from the judgment.

As to the merits of the appeal of the defendant De Laney:—

His principal contention is, that the court should have decreed him a preference above all the other creditors to the extent of four thousand two hundred dollars. He bases this right on the terms of the trust agreement, the principal creditors' agreement, and on the fact that this sum was furnished by him for the benefit of and to sustain the business of the Dillonwood Lumber Company between February 28, 1901, and June 19, 1901, when it is claimed he was acting as trustee for the corporation. Upon the latter proposition it is certain

from the evidence that during the period named there was no trust existing for the benefit of creditors. The true situation in that respect was that about February 28, 1901, the stockholders of the corporation induced appellant to undertake the control of the corporate business to the extent of financing it and placing it on a profitable basis. For these services he was to be paid one hundred and fifty dollars per month, with certain other advantages to accrue to him if the enterprise was successful. There was nothing in the nature of this transaction which fixed upon him the capacity of trustee. He was simply the superintendent or business manager of the corporation, a position which the corporation and himself were pleased to designate as that of "trustee." There was in fact no trust to which the appellation could be applied. No property had been placed in his hands in trust for any purpose, and the Dillonwood Lumber Company continued to transact business in its own name until June 19th, when appellant, under the trust agreement of that date in question here, became trustee. Until June 19th he was not a trustee, either in fact or law, and the advances made by him to the corporation prior to that date, aggregating four thousand two hundred dollars, were made while acting as agent or manager of the corporation, and for the furtherance of its business.

Neither is there any merit in his claim that he was entitled to such preference under the trust agreement or the principal creditors' agreement. The trust agreement does not itself provide for any preference in his favor, except that there is given to the principal creditors mentioned in it the right to determine the order in which the principal debts shall be paid. The principal creditors so mentioned, including appellant, agreed upon an order which gave preference to appellant; but it was only an agreement as to the order in which their debts should be paid. Their action in this respect could not affect the laborers or persons furnishing supplies, or other creditors not participating in the transaction nor acquiescing in the agreement of the principal creditors These latter had no authority to bind any one save themselves. It is not pretended that the laborers or supply men who were given preference by the court over appellant ever consented to or acquiesced in the trust agreement or this agreement of the principal creditors, or that they had any

knowledge of their existence till their claims for labor and supplies had accrued and the mill closed down, about August 29, 1901, at which date the corporation practically ceased doing business. They did not even have constructive notice of the trust agreement, as that was not recorded until September 3, 1901, several days after the mill closed down. Appellant's right to preference is to be measured by the terms of his agreement with the other principal creditors, and we cannot perceive how, under the law and the terms of the trust agreement itself, he was entitled to any preference for the payment of the four thousand two hundred dollars over the laborers and supplymen. The law fixed the right of some of the plaintiffs to a preference as laborers, and the trust agreement fixed the rights of the other plaintiffs who performed labor or furnished supplies to the appellant as trustee while conducting the business under the trust. It is quite clear that the Dillonwood Lumber Company at the time of the assignment of its property to De Laney as trustee was unable to pay its debts, and that the assignment to him as trustee was for the purpose of providing for their payment. This is apparent from the terms of the trust agreement itself, which, aside from investing the trustee with powers for that express purpose, and as evidencing in its general terms that that was the main and controlling purpose of the assignment, declares that, when the debts shall have been paid, the trustee shall reconvey the property to the corporation. And, if it were necessary to consider it as adding anything to what appears to be the express purpose of the trust agreement in that regard, the court found that the assignment was made with that particular object in view. It is provided by section 1204 of the Code of Civil Procedure that "in all assignments of property made by any person to trustees or assignees, or on account of the inability of the person at the time of the assignment to pay his debts . . . the wages of . . . laborers employed by such person or any other person who . . . performs work to the amount of one hundred dollars each, and for services rendered within sixty days previously, are preferred claims and must be paid by such trustees or assignees before any other creditor or creditors of the assignor." As the assignment of its property by the corporation to De Laney as trustee was for the purpose of providing for the payment

of its debts, the court properly applied the provisions of this section in enforcing the claims of the creditors under the trust, so as to give preference, in an amount not exceeding one hundred dollars, to the laborers who had performed labor for the corporation within sixty days prior to the assignment to appellant as trustee.

It is insisted that this provision only applies to insolvency proceedings, or to assignments for the benefit of creditors which are made as provided for in section 3449 et seq. of the Civil Code. No such limitation is placed on its application by the language of section 1204 itself. If it had been intended to apply only to particular classes of assignment, the legislature would have so limited it in terms. But it did not. It is made applicable to "all assignments." It could apply to assignments other than such as follow proceedings in insolvency, or which are made for the benefit of creditors, as provided in section 3449 of the Civil Code,—for instance, to such assignments as the one we are now considering,—and we see no reason for placing a limitation upon the general language of the section which would exclude the latter class.

As to the next preference made by the court in favor of persons performing labor for or furnishing supplies to the trustee under the trust: It is not questioned but that they were necessary running expenses of the business, entailed while it was being managed under the trust agreement, and, this being so, it only needs further to be said that their payment preferable to the claims of general creditors, including that of appellant, is expressly provided for by the trust agreement itself.

It is next insisted by appellant that the court should have allowed him as a preference his claim for salary for the period between February 28, 1901, and June 19, 1901, during which period he claims he was acting as trustee. But, as we have seen, appellant was not trustee during that period. This salary for which he claims he should have had a preference was the compensation agreed on between the corporation and himself to be paid monthly for his services as manager of the business. The court allowed his claim for it, and gave him judgment therefor, but without preference. This was proper. He was only a general creditor as to this claim.

He insists also that the court should have allowed him one

hundred and fifty dollars as his salary under the trust agreement from June 19, 1901, till the rendition of the decree in the lower court. The court did allow him as a preferred claim compensation at the rate fixed in the trust agreement from June 19, 1901, till October 1, 1901. The mill closed down in the latter part of August, 1901, and the allowances made included salary for more than a month after that time. It does not appear from the record when this action was commenced; but it is asserted in respondents' brief to have been commenced October 8, 1901, and this date is not questioned in the reply briefs of any of the appellants. The trust agreement provided for the payment of one hundred and fifty dollars per month to conduct the business. The business as a going concern had ceased in August, and after October 1, 1901, the record does not show anything to have been done by appellant which would warrant us in saying that the allowance as rendered was not all he was entitled to.

Another point urged by appellant is that the court failed to allow him at all certain amounts which he claims it was conceded by all parties he was entitled to. Aside from the amounts which the court allowed appellant as preferred claims and the nature of which is clear from the record, the court allowed him, jointly with other creditors, subsequent preferences in two amounts, $727 and $294, and a general judgment for an additional $6,637.45. It is not clear what the items composing these several amounts consisted of. It was stipulated upon the trial that defendant had paid out for hay bought of J. T. McCutcheon for use in the business subsequent to June 19, 1901, the sum of $196, and that he had paid judgments for labor performed in the business subsequent to the same date amounting to $368.75. He was entitled to allowance for these amounts, and contends that he did not receive them. We cannot say, however, from the record that they were not allowed him. They may have been allowed and proper preference not given; but even this latter point cannot be determined from the record. The entire matter is one which the record does not clearly present or the suggestions of counsel upon either side satisfactorily enlighten us about. Of course, appellant should have all that it was conceded he was entitled to; but the presumption is that the court allowed it to him, and if he did not obtain it it was incumbent on him to present

on this appeal a record which would show that such allowance was in fact not made. We cannot say that these items which he insists he was not allowed were not embraced in the amounts for which allowance was made. If that were not so, it was the business of appellant to show that fact from the record, and this he has not done.

These are the only matters relative to De Laney's appeal which we think call for discussion. He asserts that other alleged errors were committed by the court in determining the amounts which he was entitled to be allowed in his capacity as trustee, but we think that the conclusion the court reached disallowing them was correct.

As to the appeal of George M. Perine:—

This appellant makes a preliminary attack upon the pleadings, questioning the right of the plaintiffs to maintain this action and the sufficiency of the complaint as stating a cause of action. He is the only appellant in the case who does this. No demurrer to the complaint was filed or objection raised on the trial to the admission of evidence under it by any of the parties. These objections are now for the first time urged. We will not discuss their merits, because we think that, as far as any attack on the pleadings is concerned, all parties are precluded from doing so by their stipulation, under which they authorized the court to make a sale of the property of the corporation and provided for the disposition to be made of the proceeds. It is found by the court that all the parties to the action had, pending the trial of the case, stipulated that the court might order all the property mentioned in the trust agreement and involved in the action to be sold; that the court had made such order, and now had the proceeds from the sale under its control; that it had been further "stipulated and agreed between all the parties to this action that there should first be paid out of said amount the sum of $2,313.53 to N. P. Dillon, . . . and that the remainder of said amount remaining in the hands of the clerk be distributed among the parties entitled thereto." We think that under this stipulation appellant cannot now be heard to urge the objections he presents. Such a stipulation, conferring power upon the court to sell the trust property, directing the payment of a fixed sum to a designated creditor. and providing for the distribution of the remainder among

the parties to the action entitled thereto, could only be entered into on the theory that the parties signing it were properly in court under pleadings sufficient to authorize the court to determine their respective claims. This is obviously the theory upon which the stipulation was signed, and the effect of it upon appellant is that by entering into it he then waived the objections which he now endeavors to interpose on appeal.

As to the other points made by this appellant:—

At the time of the execution of the trust agreement of June 19, 1901, the Dillonwood Lumber Company was, and for some time prior thereto had been, indebted to appellant for money loaned it in the sum of three thousand dollars. This was the amount referred to in the principal creditors' agreement, to which we have heretofore referred as executed subsequent to the trust agreement, and in the creditors' agreement it is provided that appellant be given a preference, together with De Laney, before the other principal creditors as to the payment of their debts. Subsequent to the execution of these agreements De Laney, as trustee, applied to appellant for a loan of three thousand dollars. Appellant agreed to advance this amount, provided De Laney, as trustee, should execute a chattel mortgage upon the property of the corporation, which he had in trust, to secure the payment of the three thousand dollars mentioned in the principal creditors' agreement, which the corporation then owed him, together with the three thousand dollars to be advanced. De Laney agreed to do this, and on August 14, 1901, appellant advanced the additional three thousand dollars. Through some delay the promised chattel mortgage was not executed until August 29, 1901, nor recorded until September 3, 1901. Subsequently De Laney paid off a portion of this latter advance, leaving due thereon $2,059.99. The court found as to this latter amount that under the trust agreement De Laney was authorized to execute the chattel mortgage to secure its payment, and that, the property mortgaged having been sold under order of court, appellant was entitled to a preferential payment of that amount subsequent to the payment of the labor claims and claims for supplies heretofore referred to in considering De Laney's appeal. As far as the mortgage purported to secure the payment of the three-thousand-dollar indebtedness existing on July 19, 1901, when the trustee

agreement was executed, and which is referred to in the
principal creditors' agreement, the court held that De Laney
had no power or authority under the trust agreement to
execute it, that it was void to that extent, and that he was
not entitled to preference to such amount by reason of it.

It is insisted by appellant that the trust agreement of
June 19, 1901, fully empowered De Laney, as trustee, to
mortgage the property of the company, not only for the sum
advanced August 14, 1901, but also for the principal indebted-
ness existing when the trust agreement was executed, and
that appellant was a preferred creditor under the mortgage
for the full amount, and that none of the plaintiffs—laborers
or supplymen—were entitled to preference over him.   In
this regard he claims that the trust agreement created two
separate and distinct trusts, and divided the assets of the
corporation into two separate and distinct classes; that the
first trust embraced the proceeds of the business—the manu-
facture and sale of lumber—as carried on by its trustee, and
from these alone the claims for labor and necessary supplies
could be paid; that the second trust embraced the property
constituting the plant of the company necessary to carry on
the milling business, and was by the terms of the trust agree-
ment appropriated to the payment of the indebtedness of
the company then shown on its books; that as the mortgage
to appellant was on the plant of the corporation, which was
not charged with a trust in favor of the laborers and supply-
men, the proceeds of its sale under order of the court should
have been devoted to paying all the indebtedness of appellant
which it secured; and that no portion of it should have been
applied, in preference to his claim, to the payments of the
claims of laborers and supplymen, which, under the first
provision of the trust agreement, he contends, could only be
paid from the proceeds of the business itself.   This point,
while equally available under a similar construction of the
trust agreement to the appellant De Laney as to his claim to
preferred payment to the extent of four thousand two hun-
dred dollars, was not specially made by him.   We mention
this not as affecting the merits of the claim as now urged
by this appellant, Perine, but as a reason why no discussion
of it is made in disposing of De Laney's appeal.   We do not,
however, think that the trust agreement bears this construc-

tion.  It does not speak of the business of manufacturing and
selling lumber, or of any proceeds thereof to be devoted solely
or at all to payment of expenses.  It speaks of the sawmill
and lumber business of the corporation.  This embraced all
that pertained to such business—timber lands, plant, and
everything else used in connection with it—and in the assign-
ment of its property to the trustee the property is referred
to as all the property "used by it in its sawmill and lumber
business."  It was the general business in which the company
was engaged which was conveyed to the trustee, with power
to conduct and carry it on, and it was "from said business"
that the running expenses and other necessary expenses were
to be first paid.  These would ordinarily be paid from the
usual product of such business—manufacturing lumber; but
there is nothing in the trust agreement which confines their
payment to proceeds derived from such a source.  It is
obvious that the corporation transferred all its property,
which comprehensively constituted a sawmill and lumber busi-
ness, to the trustee to pay the general creditors of the cor-
poration.  This the trustee could do, if possible, from the
actual manufacturing and sale of lumber, or by a sale of the
"real estate or . . . the personal property constituting the
plant necessary to carry on and conduct said sawmill and
lumber business," with the consent of the corporation, or he
could mortgage all said property without such consent to
carry on and conduct the business, or to pay the indebtedness
to the general creditors.  These powers conferred had refer-
ence to the business of the corporation generally as including
all the property used in connection with it in the manufacture
and sale of lumber, and not to the actual manufacture and
sale. itself, and it was the running expenses and other neces-
sary expenses entailed in the general conduct of such saw-
mill and lumber business which the trust agreement provided
should be paid first; and no particular fund or source of
payment was designated for that purpose in the trust agree-
ment.  Appellant's contention that separate and distinct trusts
were. created is based principally upon the use of the word
"business" in the clause referring to preferential payment
of expenses and the use of the word "property" in the clause
referring to payment of the general creditors.  We think,
however, that no importance is to be attached to the use

of these terms. Taking the general context of the trust agreement into consideration, it is evident that the words are used as of interchangeable meaning. As to the mortgage itself, as far as it undertook to secure the payment of the indebtedness of three thousand dollars existing at the time the trust agreement was executed, little need be said. The authority of the trustee to make it must be found in the trust agreement itself, and no such power is conferred by that instrument. Authority is given to mortgage for the purpose of conducting the business and to pay indebtedness then existing. He had no power to mortgage to secure such indebtedness, and this was the only purpose of the mortgage. The trust agreement did not provide for securing by mortgage one creditor in preference to another, and the effect of the execution of the mortgage in favor of this appellant, particularly complained of by the respondents,—labor and supplymen,—is that it undertook, against the express terms of the trust agreement, to give appellant a preference over them. The trust agreement itself provided for all the preference that should be given. No authority was conferred on the trustee to create a preference in favor of appellant by executing a mortgage securing this indebtedness, and the attempt to do so was to that extent void, and the mortgage created no lien for this sum in appellant's favor.

This disposes of what we deem to be the principal points made by this appellant. Additional grounds are urged for a reversal. Some of these are disposed of in considering the appeal of De Laney. Certain of the plaintiffs were stockholders of the Dillonwood Lumber Company, and were given a preference as laborers over the mortgage of appellant, and he complains that he was not given preference over them. The pleadings, however, did not warrant this preference in his favor. If he desired any relief against these stockholders, he should have asserted it by cross-complaint, under which the liability of these stockholders and appellant's rights against them could have been determined. This he did not do. The other points urged by appellant have, in our opinion, no merit.

As to the appeal of the Holt Manufacturing Company:—

This appellant is, one of the plaintiffs, and alleged in the complaint that the Dillonwood Lumber Company and

CXLVIII Cal.—3

De Laney, as trustee, became indebted to it for certain merchandise sold and delivered to them at their request (for which judgment was ultimately given by the lower court), "and the further sum of $1,100 for the use of a traction engine used by said Dillonwood Lumber Company and said A. J. De Laney as trustee." The court found that neither of the defendants entered into any agreement to pay appellant one dollar per thousand feet of lumber hauled, or any other sum, for the use of a traction engine. It is insisted that this finding does not respond to the issue, as it is not a finding that the defendants did not use the engine in their business, or that appellant was not entitled to compensation for its use. An examination of the bill of exceptions accompanying this appeal shows that the case of this appellant was tried on the theory that the complaint alleged a contract between the parties for the payment by defendants of one dollar per thousand feet for all lumber hauled by said engine. There was no allegation in the complaint of any indebtedness based upon the reasonable use of the engine, or any attempt made to prove it. The issue assumed to have been made under the pleadings and actually tried was that a contract, as we have stated it above, was made by the parties. As this was the issue actually tried, the finding of the court was responsive to it. The further point is made that the finding is contrary to the evidence. We have examined the evidence, and, in our judgment, it fully sustains the finding.

We discover no reason for disturbing the judgment or the orders appealed from, and they are affirmed.

McFarland, J., and Henshaw, J., concurred.