[S. F. No. 6425.   Department Two.—May 12, 1914.]

STEWART BLANC, Appellant, v. IDA E. CONNOR, as Administratrix of the Estate of Susan Blanc, Deceased, et al., Respondents.

CONTRACT TO MAKE WILL—ORAL EVIDENCE TO ESTABLISH—SPECIFIC PERFORMANCE.—Where an alleged contract to make a will, resting in parol and sought to be enforced after the death of the promisor, comes before a court of equity for review, it is scrutinized, and should be scrutinized, with particular care, and only upon a satisfactory showing that it is definite and certain and just will it be enforced. The proofs of the contract should be clear, and the acts of the claimant referable alone to the contract. Proof of the contract to make a certain kind of will must be definite and distinct before a chancellor will enforce specific performance.

ID.—SUFFICIENCY OF PROOF TO SUPPORT CONTRACT—TESTIMONY OF PLAINTIFF.—Under this rule it cannot be said that the chancellor, in this suit for specific performance of an alleged oral agreement to devise real estate, erred in holding that the character of the plaintiff's testimony was such that there was no proof of such a contract.

ID.—CREDIBILITY OF WITNESSES—IMPROBABILITIES AS TO TRUTH OF TESTIMONY—CIRCUMSTANCES SHOWING FALSITY.—While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact.

ID.—FINDINGS OF FACTS—RELUCTANCE OF COURTS TO OVERTURN EVEN IN CASE OF CONFLICTING EVIDENCE.—Courts are very slow to overturn findings of fact made by a jury, and *a fortiori* those made by a court acting without a jury, even when contrary statements which are uncontradicted appear in the testimony of witnesses.

ID.—CREDIBILITY AND WEIGHT OF TESTIMONY—PROVINCE OF APPELLATE COURT.—As it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, the supreme court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy.

ID.—CHANGING THEORY OF CASE ON APPEAL.—Where in an action for the specific performance of an alleged oral contract to devise real property, the pleadings and proof are based on the theory that a contract was made, the theory of a resulting trust in the property cannot be advanced for the first time on appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

William M. Cannon, and Kingsley Cannon, for Appellant.

Garret W. McEnerney, and Andrew F. Burke, for Respondents.

MELVIN, J.—The plaintiff appeals from the judgment and from an order denying his motion for a new trial.

The action was one in which a nephew sought to obtain specific performance of an alleged oral contract by which the aunt, according to his declaration, agreed to devise to him a certain parcel of land located in the city and county of San Francisco. The court found that there was no such contract and the appeal is based largely upon the alleged errors in the making of findings to that effect.

Nearly all of the facts are undisputed. Indeed many of them are settled by stipulation. Alexander Blanc and his wife, Susan Blanc, a childless couple, resided for many years in San Francisco. Alexander's brother, Stewart Blanc, had married Susan's sister and that couple had three children, the plaintiff herein being one of them. Stewart Blanc, the father, for some reason did not support these little children and about the year 1872 they were taken into the home of the uncle and aunt, Alexander Blanc and his wife. The plaintiff, who was but one year of age in 1872, remained with his uncle and aunt until the death of Alexander in 1891 and afterward for several years with the aunt. The boy was sent to school and was treated with affection by his kinsfolk. His mother died in 1876, but it does not appear definitely when his father died. Two days before the death of Alexander (which took place on June 14, 1891) he executed a will by the

terms of which all of the estate was to go to his wife, except
a parcel of land on Jackson Street, which was to go to her
for life with remainder to the plaintiff in case he should sur-
vive her and in case of his death prior to hers, she was to
take in fee simple absolute. The plaintiff was a witness to
this will. It was filed for probate and was sustained by the
court after a contest in which the plaintiff assisted his aunt
in making a defense. At the proper time a petition for final
distribution was filed by the widow (who was also the ex-
ecutrix) in which it was alleged that Stewart Blanc had been
deprived of the devise to him by reason of his action in be-
coming a witness to the will (citing section 1282 of the Civil
Code). The petition contained the statement that ''the said
devisee, Stewart Blanc, under the provisions of section 1283
of the Civil Code of the state of California, is entitled to
succeed as the nephew of said testator to a share of the estate
of said decedent equal to the share he would have been entitled
to receive if the will of said testator had not been established,
but that such share shall not exceed the devise or bequest made
to him in the will,'' and that since the devise to Stewart was
a contingent one solely dependent upon his surviving his aunt,
he was entitled to have distributed to him no present interest
in the property. The report accompanying the final account
and signed by the executrix described her as the ''sole devisee
and legatee under the will.'' Whether this view of the law
was correct or not we need not here determine, but it is im-
portant, in view of some of appellant's contentions, to know
what the belief of Mrs. Blanc was at the time when the alleged
verbal contract was made. Plaintiff was of the opinion that
he had no interest in the estate by reason of his act in becom-
ing a witness to the will. At his aunt's suggestion he made an
assignment to her of any interest which he might have or
assert. This assignment was filed with the probate court and
distribution was thereupon had to Mrs. Blanc of the entire
estate.

Plaintiff asserts that at the time the assignment was exe-
cuted, his aunt proposed to him that if he would sign it, thus
simplifying distribution under the will of his uncle, she would
make a will in which she would devise to him the Jackson
Street property. It is the belief of plaintiff that a contract
then and there arose between him and his aunt and that the

CLXVII Cal.—46

evidence of such contract is ample, unimpeached, and sufficient in law and that there was no basis for the court's finding that no such agreement existed. Susan Blanc died intestate October 6, 1900; and her estate was in course of probate when this action was commenced fourteen months after her death.

It is asserted by cousel for plaintiff that, unless the court is prepared to impute perjury to four uncontradicted witnesses, it cannot uphold the finding of the trial court that no contract was made whereby in consideration of the execution of the quitclaim by plaintiff his aunt agreed to devise the Jackson Street land to him. The position of counsel for respondents is this: There is no witness to the alleged contract save the plaintiff himself; the other witnesses did not say there was a contract or that Mrs. Blanc admitted the existence of an agreement to devise property to Stewart Blanc, but they did say merely that she expressed an intention of leaving him her property on Jackson Street by will; by section 1847 of the Code of Civil Procedure the presumption that a witness speaks the truth may be repelled by the character of his testimony; and the character of plaintiff's testimony was of a sort that justified the court in rejecting his statement regarding the details of the alleged agreement. It is asserted that this is a class of cases sometimes arising in fraud and abounding in perjury, and although disclaiming any thought that the instant case is so tainted, counsel contend that the court was justified in scrutinizing the testimony very carefully and refusing to accept it as proof of the contract unless it presented a very strong showing that the agreement was made substantially as alleged. It is true that courts are very slow to overturn findings of fact made by a jury and *a fortiori* those made by a court acting without a jury, even when contrary statements which are uncontradicted appear in the testimony of witnesses. The rule was thus stated in *Davis* v. *Judson,* 159 Cal. 128, [113 Pac. 150], in which Mr. Justice Lorigan, delivering the opinion of this Department, said: "While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction;

or there may be circumstances in evidence in connection with
the matter, which satisfy the court of its falsity; the manner
of the witness in testifying may impress the court with a
doubt as to the accuracy of his statement and influence it to
disregard his positive testimony as to a particular fact;
and as it is within the province of the trial court to determine
what credit and weight shall be given to the testimony of any
witness, this court cannot control its finding or conclusion
denying the testimony credence, unless it appears that there
are no matters or circumstances which at all impair its ac-
curacy.'' In many jurisdictions such contracts as that here
asserted are scrutinized with the greatest care and they are
only sustained upon the most convincing proof. It is unneces-
sary to review the many authorities upon this subject from
other jurisdictions. In this state the rule is well established
and has been ever since the decision of *Owens* v. *McNally,*
113 Cal. 446, [33 L. R. A. 369, 45 Pac. 712], which has been
reaffirmed every time a similar case has come to this court on
appeal. In the opinion in that case Mr. Justice Henshaw
said; ''Where a contract such as this, resting in parol and
sought to be enforced after the death of the other party to it,
comes before a court of equity for review, it is scrutinized,
and should be scrutinized, with particular care, and only upon
a satisfactory showing that it is definite and certain and just
will it be enforced. The proofs of the contract should be
clear, and the acts of the claimant referable alone to the con-
tract. (*Ackerman* v. *Ackerman,* 24 N. J. Eq. 587.)'' That
case has been reaffirmed in the late case of *Rogers* v. *Schlotter-
back,* 167 Cal. 35, [138 Pac. 732]. The rule that proof of the
contract to make a certain kind of will must be definite and
distinct before a chancellor will enforce specific performance
was emphasized in the case of *Baumann* v. *Kusian,* 164 Cal.
583, [44 L. R. A. (N. S.) 756, 129 Pac. 986]; in which a de-
murrer to the complaint was held to have been properly sus-
tained although the contract pleaded was to the effect that
the decedent, Mrs. Fisher, had promised to treat plaintiffs as
her own children ''in every respect.'' Viewing the testi-
mony of the plaintiff under this rule, we cannot say that the
chancellor was in error when he held that there was no proof
of a contract to make a will. Plaintiff said that when his
aunt presented to him for his signature the form of assignment

to her of his interest in his uncle's estate she told him that the purpose of obtaining such a document was to get the estate out of litigation and that if he signed she would make a will giving him the Jackson Street property as his uncle had wished. The most succinct account of the conversation between plaintiff and his aunt occurred during the cross-examination of Stewart Blanc. Asked to repeat the whole of the conversation in the order in which it occurred he said: "Well, I don't know; it may have been I came into the room and she may have called me in, I don't know. I could not say positively. And she said, 'Now, here is something more about the case,' and I said, 'What is it now?' She said, 'Here is a paper for you to sign'; I said, 'What is it?' she said, 'Well, it is to close up the estate'; I said, 'Close it up? I thought it was settled'; she said, 'No, this has to be signed before we can get it outside the courts; otherwise, why, it will stay in there for years, probably, and be et up'; she said, 'I want you to sign it'; I said, 'All right, what is it?' So I kind of looked it over and I said, 'Gee, I will do that all right for you'; she said, 'Everything will be just the same as when the uncle left it.' I started in to sign it and she said, 'I will make a will and see that you get it.'" Such a conversation comports as well or better with the theory that plaintiff was impelled by gratitude toward his aunt than with the hypothesis that he was bargaining with her. Each thought that he had forfeited his interest under the will. If he possessed any right to share in his uncle's estate after failure to take under the devise it was vague and shadowy. Indeed it does not definitely appear that his father was dead and that he was an heir-at-law of his uncle, entitled to the benefits, if any, arising under section 1283 of the Civil Code. The whole transaction was such as to justify the conclusion that out of gratitude to the aunt who had reared and educated him he was willing to remove any technical obstacle to the settlement of his uncle's estate and that her declared intention to will the property on Jackson Street to him was a similar manifestation of affectionate regard and not part of a contract. In order that such a contract may be sustained the court must find that it was founded upon a valuable consideration and deliberately made by the decedent. (*Schaadt* v. *Mutual Life Ins. Co.*, 2 Cal. App. 718, [84 Pac. 249].) The court may well have decided

in view of the evidence that Mrs. Blanc, believing the interest
of Stewart Blanc in her husband's estate to have been utterly
defeated did not deliberately enter into a contract to devise
the property on Jackson Street to her nephew in return for
a quitclaim which she believed would pass no real interest
but would be useful only in hastening distribution of her
husband's estate by removing all possible claim by Stewart
or his heirs or assigns to some shadowy interest possibly con-
ferred by section 1283 of the Civil Code.

The so-called corroborating testimony need not be reviewed
at length. It established statements by Mrs. Blanc that she
intended to devise the property to Stewart Blanc but not that
she had an agreement with him so to do.

The appellant's counsel insists that Stewart Blanc and his
aunt were bargaining not for an *interest* but for a *document,*
the execution of which was a consideration which should sus-
tain the promise to devise, and that therefore it was error
to permit the counsel for defendants to cross-examine plaintiff
for the purpose of bringing out his belief that he had no in-
terest or claim against his uncle's estate. Such cross-examina-
tion, even if erroneous, could have done no harm because
plaintiff testified without objection that he was always under
the impression that he was "cut off entirely" from participa-
tion in his uncle's estate. It was justified, however, because
it tended to rebut the inference arising from the allegations
in the complaint that he was *first* informed by his aunt at
the time of the making of the alleged contract that his expected
portion was forfeited. By cross-examination it was developed
that not from his aunt but from independent sources, one of
them a lawyer whom he consulted more than a year previous
to the execution of the quitclaim, he obtained the information
that he could enjoy no part of his uncle's estate. This was
matter which the court was entitled to consider in the process
of interpreting the conversation between the aunt and the
nephew.

On redirect examination the witness was asked whether or
not he believed he was entering into a contract with his aunt
at the time of the conversation which he had undertaken to
narrate. Objection to this question was properly sustained
for it sought to elicit a self-serving declaration as to his belief.
(*Murray* v. *Bethune,* 1 Wend. (N. Y.) 191.) Since the con-

sent to the contract must be communicated by each of the parties to the other (Civ. Code, sec. 1565), the undisclosed intention of the plaintiff respecting his wish to contract with his aunt was clearly inadmissible.

It is earnestly contended that the execution of the paper and its delivery amounted to a consideration, no matter what may have been the real interest in the property possessed by the plaintiff and that such consideration supports the contract. It is unnecessary to examine the arguments in this behalf because, in view of the court's finding that there was no *promise,* the consideration which it is asserted might have supported a promise, if one were made, need not be discussed.

Error is predicated on the insufficiency of the evidence to support the finding that Alexander Blanc had two sisters, Ann Howe and Jane Wiley. It appeared from the proceedings in the estate of Alexander Blanc that he had two sisters named Ann Howe and Jane Wiley. The court found in accordance with that showing, but also found as follows: "The court is unable to find from the evidence whether Ann Howe or Jane Wiley or either of them survived Alexander Blanc, or whether either of them left any descendants her surviving who themselves survived the said Alexander Blanc." In view of this finding we cannot see how appellant could be injured by any insufficiency of proof of their existence.

It is finally contended that either a resulting trust or a constructive trust in favor of plaintiff should be impressed upon the Jackson Street property because plaintiff transferred some interest to his aunt by the quitclaim. In support of the doctrine of resulting trusts *Russ* v. *Mebius,* 16 Cal. 355, is cited. In that case there was a promise to devise which turned out to be void. In this case the court found that there was no promise to devise; but we need not discuss the authorities which appellant cites in support of either trust theory because the pleadings and proof below were based on the proposition that a contract had been made; and another theory may not be advanced in this court for the first time. (*Bank of Visalia* v. *Dillonwood Lumber Co.,* 148 Cal. 24, [82 Pac. 374].) In any event if there was a resulting trust in plaintiff's favor, it arose in 1892, and an action thereon was barred by the statute of limitations which was pleaded in the answer.

The theory of a constructive trust is based upon the confidential relations between the aunt and the nephew; his alleged implicit reliance in and obedience to her commands; his ignorance of and her knowledge of the fact that he still had an interest under the law in his uncle's estate, whereby she was enabled to obtain an undue advantage over him. In the first place there is no allegation in the complaint that plaintiff had any interest in the estate of Alexander Blanc which was passed by assignment. There is a statement that he was a nephew of Alexander Blanc, but no pleading that he became an heir-at-law by reason of his father's death before that of his uncle. Nor is it shown that he relied on any representation made by his aunt. He testified that he took independent advice of his right to share in his uncle's estate, and believed he had forfeited all right. He entertained this belief from August 8, 1891, up to his aunt's death. The account of the conference with his aunt, given by plaintiff, falls far short of showing violation by her of any fiduciary relation, and under the authority of *Colton* v. *Stanford,* 82 Cal. 351, [16 Am. St. Rep. 137, 23 Pac. 16], he is entitled to no relief as upon a constructive trust.

No other alleged errors require consideration.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.