228 F.2d 420
 DIVISION OF LABOR LAW ENFORCEMENT, Department of Industrial Relations, State of California, Appellant,
v.
STANLEY RESTAURANTS, Inc., Ralph Meyer, as assignee for the benefit of Stanley Restaurants, Inc., and United States of America, Appellees.
 No. 14048.
 United States Court of Appeals Ninth Circuit.
 November 18, 1955.
 
 Pauline Nightingale, Edward M. Belasco, Leon H. Berger, Los Angeles, Cal., for appellant.
 Gendel & Raskoff, Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., H. Brian Holland, Asst. Atty. Gen., for appellees.
 Before STEPHENS, FEE and CHAMBERS, Circuit Judges.
 STEPHENS, Circuit Judge.
 
 
 1
 This appeal has been here before, and it may be seen in our opinion in United States v. Division of Labor Law Enforcement, 9 Cir., 1953, 201 F.2d 857, 36 A.L. R.2d 1197, that we held an assignment to a private assignee for benefit of creditors under Section 1204 of the California Code of Civil Procedure[1] does not prevail in favor of labor claims over claims of the United States by Rev.Stat. 3466.[2] We reversed the district court and remanded the case, to hold accordingly.
 
 
 2
 The mandate of this court was filed and spread upon the records of the district court which then held not only that the priority of the United States was superior to the appellant's claim arising under Section 1204 of the California Code of Civil Procedure, supra, but that in addition the fees, expenses, disbursements and charges of the assignee were superior in entitlement to plaintiff's liens.
 
 Jurisdiction
 
 3
 The Division of Labor Law Enforcement appealed from the judgment as to fees, et cetera. This court questioned its jurisdiction to hear the appeal, inasmuch as the United States was no longer an interested party to the suit, and upon the further ground that notice of appeal was filed more than thirty days after judgment.[3]
 
 
 4
 Supplemental briefs were filed and oral argument was heard on these points, and the appeal is now before us for decision.
 
 
 5
 A review of the statutes involved indicates that even though the claims of the United States were judicially settled prior to this appeal, the district court retained jurisdiction to hear the cause. Section 1340 of the Judicial Code, Title 28 U.S.C.A., provides with a minor exception for original jurisdiction over actions arising under the revenue law. Section 1346(a) (2) of Title 28 U.S.C.A. provides for original jurisdiction for certain actions not exceeding $10,000. Section 1441 provides for removal of actions from the state to federal courts. Subparagraph (c) of Section 1441 provides:
 
 
 6
 "Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matter not otherwise within its original jurisdiction." [Emphasis added.] § 1441(c) of Title 28 U.S.C.A.
 
 
 7
 This would seem to settle the point in favor of the court's jurisdiction. There is no reason to suppose that the district court did not properly exercise its discretion in retaining jurisdiction.
 
 
 8
 Appellee urges that the appeal should be dismissed by reason of being filed more than 30 days after judgment when the United States was no longer a party to the suit. (Appellee's earlier motion to this effect was denied by us.) In support of this contention appellee cites the case of Virginia Land Co. v. Miami Shipbuilding Corp., 5 Cir., 1953, 201 F.2d 506. Though superficially similar, this case is not applicable here, since a careful reading shows that the United States never had a claim against the appellant therein and joined it as party defendant against its wishes only at the order of the court. Such is not the case in the instant case. Since a real controversy initially existed between appellant, appellee, and the United States, the fact that the rights of the United States have now been satisfied does not change the fact that this action is one to which the United States is a party within the purview of Rule 73(a).[4] Appellant's contention that satisfaction and withdrawal of the United States at some time during the proceedings, causes a change in the jurisdictional rules, is inconsistent with what we have said before and is well answered by the words of the first circuit in commenting upon an attempted narrow construction of Rule 73(a): "The short answer to this contention is that if Congress had intended its words to have the limited construction contended for we think it would, as it easily could, have used appropriate language to express that limited meaning. Having spoken generally we construe the words used as they read." Mercado v. United States, 1 Cir., 1950, 183 F.2d 486, 487.
 
 Does Assignment for Benefit of Creditors Instanter Create Lien in Wage Claimants?
 
 9
 The sole remaining question is whether under Section 1204, California Code of Civil Procedure, an assignment for benefit of creditors instanter creates in wage claimants of the assignor, a lien on the property assigned which is superior in entitlement to the expenses of administration and liquidation incurred by the assignee? An examination of the applicable authority indicates this question must be answered in the affirmative. The California Civil Code provides in respect to liens:
 
 
 10
 "§ 2872. Definition. A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act." (Enacted 1872 as amended, Code./Am. 1877-78, c. 74, p. 88, § 1) West's Ann.Calif.Codes.
 
 
 11
 The rationale of our opinion and decision in United States v. Division of Labor Law Enforcement, 9 Cir., 1953, 201 F.2d 857, 36 A.L.R.2d 1197, supra, is that no lien for wages could become effective over the United States government's declaration that its taxes must be satisfied out of the estate before any other debt is so satisfied. That of course the property must be in the estate and that to the extent that a completed and perfected lien was existent as to any property, that moiety of the property so existent was realistically not in the estate and therefore could not be resorted to for payment of the taxes.
 
 
 12
 That the wage claimants had no moiety of interest over that of the United States because the State could not by its ipse dixit set aside the plain declaration of the United States under its taxing power by merely declaring that a wage claim shall exist as a lien in the future when an assignment for the benefit of creditors is effected.
 
 
 13
 It follows that our former opinion and decision, so understood, did not and could not affect the completion and perfection of the lien as to all other claims. See People of State of Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 374, 375, 67 S.Ct. 340, 91 L.Ed. 348.
 
 
 14
 Appellant directs our attention to the closing provision of § 1204 which subordinates the liens of wage claimants to the payment of the current operating expenses of a receiver. We agree that the legislature, by granting such priority solely to receiverships to the exclusion of all other forms of liquidation proceedings, meant to restrict the priority exclusively to the class specifically named, and we so hold under the doctrine of "expressio unius est exclusio alterius."[5]
 
 
 15
 As appellant states, the reason for the exception in favor of receiverships is clear. There, the estate is in the hands of a court-appointed and supervised individual acting as an arm of the court. Such is not true of the common law assignee. No matter how salutary the practice of assignments for creditors, it must be conceded that as an individual engaged in private enterprise, the assignee is for practical purposes outside the control and supervision of the court.
 
 
 16
 The precise point involved in this appeal was determined in the leading California case of Bank of Visalia v. Dillonwood Lumber Co., 1905, 148 Cal. 18, 82 P. 374. In that case an assignment was made by the debtor corporation to one of the creditors as trustee for benefit of creditors. By the terms of the agreement the trustee was to carry on the business and pay off the indebtedness. In ultimately disposing of the case, it was found that the fund derived from the sale of corporate property would be inadequate to pay all the allowed claims, and the court allowed a priority to wage claimants, under § 1204, C.C.P., over the expenses incurred by the trustee in liquidation and administration of the assigned property. In conducting the business, the trustee engaged certain persons to perform labor or furnish necessary supplies; to these persons the court awarded next preferential payment. To the effect that such expenses are part of the assignee's cost of liquidation and administration, see Shull v. Fontanet Co-op Mining Ass'n, 1891, 128 Ind. 331, 26 N.E. 790, cited and relied upon by appellee.
 
 
 17
 In Div. of Labor Law Enforcement v. Plotnek, No. 601781, 24 C.C.H. Labor Cases, Para. 67,793, supra in footnote 5, the trial court stated: "The claims of plaintiff, Division of Labor Law Enforcement etc., which are secured by a lien under C.C.P. 1204, are next entitled to payment subordinate in priority to the claims of the United States, out of any and all funds of the defendant Plotnek which came into the hands of the trustees. The claims of the plaintiff are entitled to payment before the allowance to the trustees of any of their fees or expenses * * *." Cases cited by appellee in support of a position contrary to the above are distinguishable from our case in that the state statute in question gave wage claimants a priority rather than a lien,[6] or expressly gave priority to assignees' expenses over wage claims,[7] or the case involved a court-appointed receiver rather than a common law assignee for benefit of creditors.[8]
 
 
 18
 Appellee earnestly argues that a ruling in favor of appellant's position would be fatal to the accepted salutary business practice favoring assignments for the benefit of creditors since the risk of non-payment of fees and expenses would be immeasurably increased if labor claims be held to be entitled to a priority. No assignee for the benefit of creditors, it is argued, could administer the estate of the debtor even for the short span necessary for liquidation if such a "harsh" and "unconscionable" rule be established. We think appellee has overstated the harm, but even if not, we find no sufficient ground for holding otherwise. A trenchant statement in this regard is contained in In re Milwaukee Sheep & Wool Co. (Town of Emery v. Alm), 1925, 186 Wis. 320, 202 N.W. 693, 695:
 
 
 19
 "His [the common law assignee's] assumption of duty is voluntary. Before he evidences his consent he must determine from a reasonable aspect of the situation as it then appears whether a remuneration will accrue to him or not. He is the sole judge, under the circumstances, and must abide by the results, whether favorable to him or otherwise."
 
 
 20
 The judgment of the lower court should be modified to conform with this opinion.
 
 
 21
 Affirmed as modified.
 
 
 
 Notes:
 
 
 [1]
 § 1204: "When any assignment, whether voluntary or involuntary, and whether formal or informal, is made for the benefit of creditors of the assignor, or results from any proceeding in insolvency or receivership commenced against him, or when any property is turned over to the creditors of a person, firm, association or corporation, or to a receiver or trustee for the benefit of creditors, thewages and salaries of minors, mechanics, salesmen, servants, clerks, laborers, and other persons, for personal services rendered such assignor, person, firm, association or corporation, within 90 days prior to such assignment, or the taking over of such property, or to the commencement of the proceeding when a court action is involved, and not exceeding six hundred dollars ($600) each, constitute preferred claims and liens as between creditors of the debtor, and must be paid by the trustee, assignee or receiver before the claim of any other creditor of the assignor, insolvent, or debtor whose property is so turned over, and must be paid as soon as the money with which to pay same becomes available. If there is insufficient money with which to pay all such labor claims in full the money available must be distributed among the claimants in proportion to the amount of their respective claims. The trustee, receiver or assignee for the benefit of creditors shall have the right to require sworn claims to be presented and shall have the right to refuse to pay any such preferred claim, either in whole or in part, if he has reasonable cause to believe that such claim is not valid but must pay any part thereof that is not disputed, without prejudice to the claimant's rights, as to the balance of his claim, and withhold sufficient money to cover the disputed portion until the claimant in question has a reasonable opportunity to establish the validity of his claim by court action, either in his own name, or through an assignee.
 "This section is binding upon all the courts of this State and in all receivership actions the court must order the receiver to pay promptly out of the first receipts and earnings of the receivership, after paying the current operating expenses, such preferred labor claims and such liens." [Emphasis added.] [Enacted 1872; Am.Code Amdts. 1873-74, p. 352; repealed and added by Stats.1907, p. 321; Am.Stats.1931, p. 1700; Stats. 1933, p. 621; Stats.1945, ch. 1192, § 1; Stats.1951, ch. 476, § 1.]
 
 
 [2]
 Title 31 U.S.C.A. § 191. Priority established
 "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." R.S. § 3466. Derivation: Act of March 3, 1797, ch. 20, § 5, 1 Stat. 515; Act of March 2, 1799, ch. 22, § 65, 1 Stat. 676.
 
 
 [3]
 Rule 73, Federal Rules of Civil Procedure, Title 28 U.S.C.A.; see our footnote 4 infra. See, also, § 2107 of Title 28 U.S.C.A
 
 
 [4]
 Rule 73(a), Federal Rules of Civil Procedure, Title 28 U.S.C.A., provides:
 "When an appeal is permitted by law from a district court to a court of appeals the time within which an appeal may be taken shall be 30 days from the entry of the judgment appealed from unless a shorter time is provided by law, except that in any action in which the United States or an officer or agency thereof is a party the time as to all parties shall be 60 days from such entry, * * *." [Emphasis added.] As amended Dec. 27, 1946, eff. Mar. 19, 1948.
 Compare § 2107 of the Judicial Code, Title 28 U.S.C.A.:
 "§ 2107. Time for appeal to court of appeals,
 "Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in any action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree.
 "In any such action, suit, or proceeding in which the United States or an officer or agency thereof is a party, the time as to all parties shall be sixty days from such entry." § 2107, Title 28 U.S. C.A. [Emphasis added.]
 
 
 [5]
 On this point we quote with approval the following statement of the Superior Court of Los Angeles County, California:
 "The assignments made were not statutory, but were common law assignments, and from its inception Section 1204 of the C.C.P. has contained no provision to allow a common law assignee fees or expenses ahead of priority wages. In 1931 the statute was amended to allow a special priority to current operating expenses in the case of a court receivership. Since the legislature limited the expense authorization to such an extent the rule of expressio unius est exclusio alterius is applicable." Div. of Labor Law Enforcement v. Plotnek, No. 601781, 24 C.C.H. Labor Cases, Para. 67,793.
 
 
 [6]
 Pavone Textile Corp. v. Bloom, 1951, 302 N.Y. 206, 97 N.E.2d 755
 
 
 [7]
 Shull v. Fontanet Co-op. Mining Ass'n, 1891, 128 Ind. 331, 26 N.E. 790
 
 
 [8]
 Kennebec Box Co., Inc., v. O. S. Richards Corp., 2 Cir., 1925, 5 F.2d 951