[Sac. No. 2010. In Bank.—January 23, 1913.]

MRS. MINNIE BAUMANN and MRS. JENNIE ERIKSSON, Appellants, v. F. G. KUSIAN et al., Defendants and Respondents; LUCIE FISCHER, Intervener and Respondent.

SPECIFIC PERFORMANCE—CONTRACT TO MAKE WILL.—To warrant the specific enforcement of a contract to make a will in favor of a particular person, the contract must be definite and certain and also just and fair.

ID.—ORPHANS TAKEN FROM CHARITABLE INSTITUTION—PROMISE TO CARE FOR AS CHILDREN—INDEFINITENESS OF CONTRACT.—A contract entered into by a man and wife, at the time of taking two orphan minors from a charitable institution of which they were inmates, to the effect that they would take such children to their home, and would take good care of them and would rear and educate them in a suitable and proper manner, and would treat them in all respects as their own children, is too indefinite and uncertain to warrant a construction that would impose any obligation on the promisors to bequeath or devise any property to such children, or even to make them their heirs by legally adopting them as their own children.

ID.—SUBSEQUENT PROMISE TO LEAVE PROPERTY TO CHILDREN—UNCERTAINTY OF CONTRACT—UNFAIRNESS AND INADEQUACY OF CONSIDERATION.—Promises subsequently made by such man and wife to such minor children, at various times while the latter were living with them as a part of their family, to the effect that if they continued to remain with them at their home, they should have their property, in consideration of which the children agreed to remain with them for an unspecified and indefinite time, and did so remain until their

respective marriages, during all of such time conducting themselves as dutiful children and rendering dutiful services to them, will be refused specific performance as a contract to make a will in favor of such children, both on account of the vagueness and uncertainty of the promises of the children, and also because their promises did not constitute a fair and adequate consideration for the contract.

ID.—ENFORCEABILITY OF CONTRACT TO MAKE WILL.—Courts of equity will, under special circumstances, enforce a contract to make a will, or to make a certain testamentary disposition; and this may be done, even when the agreement was parol, where in reliance upon the contract the promisee has changed his condition and relation so that a refusal to complete the agreement would be a fraud upon him.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

McCoy & Gans, for Appellants.

Jno. J. Wells, for Defendants and Respondents.

W. P. Johnson, and W. A. Fish, for Intervener and Respondent.

ANGELLOTTI, J.—The demurrers of the defendants and intervener to plaintiffs' amended complaint, on the ground that the same does not state facts sufficient to state a cause of action, having been sustained without leave to amend, judgment was given that plaintiffs take nothing. This is an appeal by plaintiffs from such judgment.

The action is one to obtain a decree declaring the plaintiffs to be the owners of and entitled to receive all the property of one Christiane W. Fischer, deceased, subject to the administration of her estate pending in the superior court of Tehama County, their claim being substantially that deceased had contracted to leave all of her property to them when she died and had failed to do so. The defendants are heirs of deceased and the intervener is an adopted daughter. The action is thus practically one against the heirs of deceased to specifically enforce an alleged contract of deceased by which she agreed to make a will in favor of plaintiffs.

The amended complaint substantially alleges as follows:

On September 28, 1892, deceased and her husband, Herman A. F. W. Fischer, executed mutual wills, each leaving to the other all of his or her property. On October 8, 1892, each executed a codicil providing that no part of his or her estate should go to a specified adopted daughter, and reaffirming the will in all other respects. Mr. Fischer died November 29, 1908, and under his will all of the property of his estate was distributed to Mrs. Fischer. Mrs. Fischer died December 28, 1910, leaving no lineal descendant and leaving all the property acquired from her husband's estate and other property, the same being of the value, after the payment of debts and expense of administration, of not exceeding twelve thousand dollars. She made no other will than that above referred to and this will has been admitted to probate.

On April 9, 1896, plaintiffs, who were in no way related to either of the Fischers, were, and for some years had been, orphan children, and were inmates of "The Five Points House of Industry" of the city of New York, state of New York, being cared for thereby. They were respectively eleven and fourteen years of age. On or about April 9, 1896, the Fischers, who then lived in the state of Iowa, took them from said institution to their home. Plaintiffs remained with the Fischers at their home in Iowa until January, 1901, when the Fischers moved to Corning, California, the plaintiffs accompanying them. They continued to live with the Fischers in California until their respective marriages. Plaintiff Minnie Baumann was married in October, 1905, and plaintiff Jennie Eriksson was married in September, 1903. From April 9, 1896, until their respective marriages, each bore the name of Fischer as her family name, and during the whole of said period each treated the Fischers as her lawful parents and rendered to them "dutiful service."

At the time the Fischers took the plaintiffs from said institution they promised and agreed that "they would take said plaintiffs to their home and would take good care of them and would rear and educate them in a suitable and proper manner, and that they would treat them in all respects as their own children." The plaintiffs were then being well cared for and well reared and educated in said institution, and if the Fischers had not taken them, they would have continued to

have been well cared for and educated therein, or placed in some suitable family for such care and education. The authorities of said institution would not have permitted the Fischers to take plaintiffs if it had not been for such promises and agreements on their part. Such promises and agreements were made by the Fischers for the purpose of securing plaintiffs from said institution.

On divers occasions while plaintiffs were living with the Fischers in Iowa they "became homesick to return to the said Home in New York." The Fischers promised and agreed to and with them that " if they would remain with them at their said home in Iowa, they would rear and educate them in a suitable and proper manner and treat them in all respects as their own children, and that they, said plaintiffs, should have the property of the said Fischers," and frequently told them that they had adopted them and that they should have their property, and that they had made a will for them. Plaintiffs believed all these statements, and on account thereof remained with the Fischers. They would not have so remained but for said promises and agreements. The Fischers made such promises for the purpose of inducing plaintiffs to remain with them as their own children.

When, in 1901, the Fischers were about to move to California, they renewed such promises, and because thereof plaintiffs came to California with them, and would not otherwise have come. After coming to California the Fischers renewed said promises "from time to time . . . and up to the time of and even after the marriage of plaintiffs."

It was substantially alleged that plaintiffs can be adequately compensated for the injury caused by the failure of the Fischers to leave them their property only by being awarded the residue of the property of Mrs. Fischer after the payment of debts and expenses of administration.

Although a failure on the part of both the Fischers to perform any of their promises and agreements is alleged, we do not understand that plaintiffs claim any part of the estate, or, indeed, any relief whatever, on account of any alleged failure on the part of the Fischers, except that relating to the alleged promise to leave their property to them. Obviously, plaintiffs are seeking specific enforcement of the alleged contract only in so far as that part thereof is concerned, and in deter-

mining whether they are entitled to such relief, it cannot at all assist them that the Fischers failed and neglected to perform other alleged promises and agreements. The general allegations as to such other failures and neglects may therefore be entirely disregarded.

It is clear enough from what we have said that the complaint does not show any promise or agreement on the part of the Fischers before they received these orphan children from the New York institution and took them to their home in Iowa, to the effect that they would bequeath or devise to them any of their property. Upon this point we cannot do better than to quote from the opinion of the learned trial judge, which is contained in respondents' brief. He said: ''The terms on which they were to take and rear and educate the plaintiffs were fixed before they left the home in New York. Those terms were on the part of the Fischers that they would take the plaintiffs to their home in Iowa and take good care of them and rear and educate them in a suitable manner and treat them in all respects as their children. This was the whole offer on their part and by its acceptance by those acting on behalf of the plaintiffs it became the terms of the contract. There is nothing in this contract about making a will and leaving the plaintiffs property. Property is not mentioned. It does state that the Fischers agreed to treat them as their own children. But this does not imply that they would get the Fischers' property. There is no legal obligation resting on any parent to will any property to a child, if he does not feel so disposed and if he does not the child has no cause of action.'' It is well settled that to warrant specific enforcement of a contract of the character here alleged, the contract must be definite and certain. (See *Owens* v. *McNally,* 113 Cal. 444, 451, [33 L. R. A. 369, 45 Pac. 710], and cases there cited.) Certainly there is nothing alleged in the complaint as to the agreement made in New York that warrants a conclusion that such agreement is definite and certain to the effect that the Fischers undertook to bequeath or devise any property to plaintiffs, or even to make them their heirs by legally adopting them as their own children.

We are thus brought to what subsequently took place in Iowa between 1896 and the removal to California in 1901 as the sole basis of plaintiffs' claim. On divers occasions plain-

tiffs "became homesick to return to the said home in New York," and would not have remained with the Fischers but for the promises and agreements then made by them to and with plaintiffs, to induce them to remain. Those promises and agreements were that "if they (plaintiffs) would remain with them at their said home in Iowa," in addition to the fulfillment of the promises made in New York by the Fischers, plaintiffs should have the property of the Fischers, and that they, the Fischers, had adopted them and made a will for them. When about to come to California in 1901, the Fischers renewed said promises and statements, and because thereof plaintiffs came with them, and would not otherwise have come. During all the time plaintiffs were with the Fischers they were "dutiful children" to them and rendered "dutiful service" to them. Said promises and agreements and statements were renewed from time to time after the said coming to California, and even after the marriage of plaintiffs.

It is to be noted that there is no express allegation in the complaint as to what plaintiffs agreed to do in consideration of the alleged promises on the part of the Fischers except in so far as such undertaking may be implied from the allegations as to what they in fact did, namely: remained with the Fischers, both in Iowa and California, as a part of the family, until their respective marriages, and during all of said time conducted themselves as "dutiful children" to them, and rendered "dutiful service" to them. It is nowhere expressly alleged that there was ever any stipulation on the part of plaintiffs as to the time during which they were to continue to live with the Fischers or as to the kind of service they were to render them.

The principle applicable to cases of this character was stated by this court in *McCabe* v. *Healy,* 138 Cal. 81, 84, [70 Pac. 1008], quoting from Pomeroy on Specific Performance as follows: "Courts of equity will, under special circumstances, enforce a contract to make a will, or to make a certain testamentary disposition; and this may be done, even when the agreement was parol, where in reliance upon the contract the promisee has changed his condition and relations so that a refusal to complete the agreement would be a fraud upon him. The relief is granted, not by ordering a will to be made, but by regarding the property in the hands of the heirs, devisees,

or representatives of the deceased promisor, as impressed with a trust in favor of the plaintiff, and by compelling defendant, who must of course belong to some one of these classes of persons, to make such a disposition of the property as will carry out the intent of the agreement.'' The same doctrine had been substantially declared in an earlier case (*Owens* v. *Mc-Nally*, 113 Cal. 444, 448, [33 L. R. A. 369, 45 Pac. 710], and the views expressed in these two cases have been followed in subsequent cases. It is entirely unnecessary in this case to consider to what extent the doctrine of these cases has been affected by the amendment of section 1624 of the Civil Code in the year 1905, by which a new subdivision was added to said section, including such contracts among those declared by the section to be invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent.

The facts alleged in the amended complaint are not such as to serve as a basis for a very strong appeal to the sense of justice of a court of equity, on the theory that there was such a change of conditions and relations on the part of plaintiffs, made in reliance on any promise or promises of the Fischers, that it would be a fraud upon them not to give them the Fischer property. When originally taken by the Fischers they were orphan children aged respectively eleven and fourteen years, without a single relative on earth so far as appears, and without any friend or home except such as was afforded them by the charitable institution of which they were inmates. They could expect nothing therefrom except such care, support, and education as are ordinarily afforded by such an institution, until such time as they might be placed in some family under such terms as the Fischers agreed to with the authorities of the institution. It is not to be assumed that they would have fared better in any other family than they did with the Fischers. They were furnished by the Fischers with a home until their respective marriages. So far as appears, they gave up and sacrificed absolutely nothing in the way of present or prospective advantage by remaining with the Fischers. This is especially true as to the situation when any alleged promise as to property was made, none of which promises is alleged to have been given until after they went to Iowa. Up to this time certainly, as was stated by the

learned judge of the court below, "it seems to have been just the ordinary case of a person taking a child from an orphan asylum to rear and educate it for whatever services it might render and for its companionship." There is nothing to indicate that it would have been to plaintiffs' advantage in any way to leave the Fischers, or to return to the charitable institution in New York, if they could have done so, or to remain in Iowa when the Fischers came to California. While with the Fischers they are not alleged to have rendered any unusual service. They simply conducted themselves as "dutiful children" and rendered "dutiful service." They certainly have received, so far as appears, what would ordinarily be considered adequate compensation for all they have given.

As we have said, it is settled that to warrant specific enforcement of a contract of the character here alleged, the contract must be definite and certain. It is also settled that it must be just and fair. It was said in *Owen* v. *McNally,* 113 Cal. 444, [33 L. R. A. 369, 45 Pac. 710], "But the question whether relief should be granted or denied in a particular case addresses itself to the conscience of the chancellor, and before a plaintiff entitles himself to it, many considerations enter and are to be weighed. . . . Where a contract such as this, resting in parol and sought to be enforced after the death of the other party to it, comes before a court of equity for review, it is scrutinized and should be scrutinized, with particular care, and only upon a satisfactory showing that it is definite and certain and just will it be enforced. The proofs of the contract should be clear, and the acts of the claimant referable alone to the contract."

We have already pointed out wherein the alleged contract is vague and uncertain as to the undertaking of plaintiffs in consideration of which the alleged promises on the part of the Fischers were made. From what we have said as to the facts of this case, as alleged in the complaint, we are of the opinion that it also sufficiently appears that there was no such showing of adequacy of consideration for the alleged promise of the Fischers in regard to their property as to appeal to a court of equity as requiring specific enforcement, in the face of the rule that the contract must be just and fair. That plaintiffs agreed simply to remain with the Fischers for some unspecified and indefinite time, conducting themselves during

said time as "dutiful children" and rendering "dutiful service," which is substantially all that appears, is, under all the circumstances of this case, far from such a fair and adequate consideration as would appeal to a court of equity as being fair and just. And finally, we agree entirely with what was said by the learned judge of the trial court, to the effect that it is not perceivable how the plaintiffs made such a sacrifice of present or prospective advantages in reliance upon the alleged statements of the Fischers, that it would now be a fraud upon them not to give them the Fischer property.

In one or two of the cases cited by learned counsel for plaintiffs, relief in the nature of specific enforcement was given, although it does not appear from the opinion that there was any explicit promise in the matter of property. Such a promise appears to have been implied in one case from an undertaking to provide for the child and bring her up as her own (*Van Tine* v. *Van Tine,* (N. J. Ch.) 1 L. R. A. 155, 15 Atl. 249), and in the other from a written statement in adoption proceedings which proved abortive to the effect that the deceased and his wife intended to make the child their heir. (*Wright* v. *Wright,* 99 Mich. 170, [23 L. R. A. 196, 58 N. W. 54].) Both cases were, by reason of their peculiar circumstances, what are called "hard cases," and the opinion in the last case cited was by a divided court, two out of five justices dissenting. We cannot at all accede to the view that relief may be given in such a case in the absence of a clear and definite promise on the part of the deceased to the effect that the child shall have his property or some specified portion thereof when he dies. We say this much with reference to the understanding and agreement at the time the Fischers took the plaintiffs in New York.

We find nothing in any of the other cases cited that requires notice. Each case must necessarily depend upon its own peculiar circumstances. We are satisfied that the lower court did not err in sustaining the demurrer to the amended complaint.

The judgment is affirmed.

Shaw, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.