[Civ. No. 169. Fifth Dist. Jan. 23, 1963.]

Estate of KATHERINE G. MILLER, Deceased. BURKE E. BURFORD, as Executor, etc., Petitioner and Respondent; SALLY MILLER FIELD et al., Distributees and Respondents, v. MIRIAM MILLER HARTMAN, Objector and Appellant.

Hutchinson & Quattrin and J. Albert Hutchinson for Objector and Appellant.

Burke E. Burford. in pro. per., Burford, Hubler & Burford and Gaylord N. Hubler for Petitioner and Respondent.

Alef & Schnitzer, Arthur Alef, Thomas, Snell, Jamison, Russell, Williamson & Asperger, T. Newton Russell and James E. LaFollette for Distributees and Respondents.

CONLEY, P. J.—This is an appeal from judgments approving the account of an executor, for preliminary distribution and related orders in a testate probate proceeding. The judgments appealed from, among other things, directed a preliminary distribution of equal one-third shares of specified property to each of two of decedent's three daughters and denied distribution of the remaining one-third share to the trustee of a testamentary trust of which the third daughter, Miriam Miller Hartman, is life beneficiary. The principal question to be determined is whether it was reversible error for the trial court to deny preliminary distribution to the testamentary trustee at the same time that it ordered such distribution to the other major legatees named in decedent's will.

Katherine G. Miller died on November 29, 1960. Her will, dated November 14, 1958, and a codicil of March 1, 1959, were admitted to probate in the Superior Court of Tulare County on December 19, 1960. Pursuant to the provisions of the will, Burke E. Burford, an attorney at law and a member of the firm of Burford, Hubler & Burford, was appointed executor; he is also the trustee named in the will.

Mrs. Miller left one-third of her property outright to her daughter Marcia Miller Nelson, another third to her daughter Sally Miller Field and the remaining third to Burke E. Burford as trustee for her daughter, appellant herein, Miriam Miller Hartman, and upon her death to other specified beneficiaries. The will directs the trustee to make discretionary support payments of income, and if necessary of principal, to Miriam. Upon the death of Miriam Miller Hartman and the payment of her funeral expenses and expenses of her last illness the income from the trust property was to be paid to her husband, Irvin Peers Hartman, during his lifetime, and upon his death the remaining trust assets were to be distributed in equal shares to the then living grandchildren of decedent and their lawful issue by right of representation. Irvin Peers Hartman has died in the meantime.

The fifth paragraph of the will contains an *in terrorem* clause:

"I have intentionally omitted making provision for all of my heirs who are not specifically mentioned herein, and I hereby generally and specifically disinherit each, any and all persons whomsoever claiming to be or who may lawfully be determined to be my heirs at law except such as are mentioned in this Will, and if any such persons, or such heirs, or any devisees, or legatees, or beneficiaries under this Will and the trust herein created, or intended to so be, shall contest in any court any of the provisions of this instrument, or shall not defend or assist in good faith in the defense of any and all such contests, then each and all of such persons shall not be entitled to any devises, legacies or benefits under this Will or any codicil hereto or under the trust created hereby, and any and all devises, legacies and portions of the income and corpus of the trust estate either or both otherwise provided to be paid to such person, shall be paid, distributed and pass as though such person had died without issue of his or her body before my death or before becoming entitled to receive income or any portion of the corpus of said trust estate."

On August 8, 1961, Miriam Miller Hartman filed a com-

plaint in the Superior Court of San Mateo County in which Burke E. Burford, as executor of this estate, Marcia Miller Nelson and Sally Miller Field, and their children are named as defendants; it alleges that Katherine G. Miller and her predeceased husband entered into a contract by which each agreed to leave his or her estate to the surviving spouse and then over in equal shares to their three daughters, and that the ''purported will'' in this estate proceeding does not conform to the agreement in that it leaves the share of Miriam Miller Hartman in trust rather than outright to her. The pleading further avers:

''Defendants, and each of them, intend and threaten to cause the distribution of the estate of decedent, to the extent of one-third (1/3) thereof to defendant Burford as such purported trustee in accordance with the purported will of decedent in violation of said agreement by and between decedent and decedent's spouse, as aforesaid; plaintiff has no plain, speedy or adequate remedy at law available to prevent said threatened distribution of said one-third (1/3) of decedent's estate to defendant Burford as such purported trustee, as aforesaid; and if the equitable relief herein sought is not granted, plaintiff will be defrauded and will suffer great and irreparable injury and damage in being deprived of the benefit of said agreement by and between decedent and decedent's spouse, as aforesaid, specially made for her benefit, and of the will of her father, decedent's spouse, made and maintained in accordance with said agreement aforesaid.''

On January 15, 1962, there was filed the ''First Account and Report of Executor and Petition for Settlement Thereof, For Allowance on Account of Statutory Compensation, for Instructions, and for Preliminary Distributions.'' The report discloses that on September 8, 1961, the executor made an informal and previously unauthorized distribution of decedent's household goods to Marcia and Sally and to Burke E. Burford as trustee and that on November 27, 1961, he distributed $5,000 in cash to each of the same persons. It is alleged that the distribution of the household goods was made to eliminate storage charges and of the cash to reduce income taxes; the executor asked ratification of his actions in that respect. He also sought the court's order for a further preliminary distribution of estate property of the value of $372,444.96 in three equal shares to Marcia, Sally and himself as trustee. The petition requested that he be instructed to defend the San Mateo suit.

On January 19, 1962, appellant filed written objections to the executor's account and petition for preliminary distribution in substance as follows:

". . . the court is without jurisdiction of the subject matter of such petition . . .";

". . . the court is without jurisdiction of the subject matter of such petition insofar as said petition seeks a decree of preliminary distribution, upon the ground that said estate is not in a condition to permit preliminary, or any, distribution of any asset thereof, as set forth in said petition, or otherwise."

"Said objections are further made and based upon the facts alleged and set forth in the complaint . . . [in *Hartman* v. *Burford*]."

". . . the . . . court is without jurisdiction to hear or determine any of the issues or subject matter of said action of *Hartman* v. *Burford*. . . ."

". . . there is no showing or provision for security to ensure the carrying out of the judgment to be made and entered in said proceeding of *Hartman* v. *Burford,* imposing a trust upon the assets of said estate upon distribution thereof to the distributees named in said will of said decedent, and said assets are apt to be concealed, consumed and disposed of by said distributees in violation of the trust to be imposed upon said assets by the judgment in said action entitled *Hartman* v. *Burford.*"

The objector prayed that distribution, preliminary or otherwise, be withheld until the judgment in *Hartman* v. *Burford* shall have become final.

On February 27, 1962, Marcia Miller Nelson was appointed guardian *ad litem* for her two minor children. On the same day the hearing on executor's petition, account and objections thereto was held, at which time there was extensive argument by counsel, but no oral testimony was taken.

The trial judge signed and filed a "Judgment Settling First Account and Report of Executor, for Allowance on Account of Statutory Compensation and Order Instructing Executor" on March 20, 1962, by which the court approved the account of the executor, except that it withheld a ruling on the propriety of the preliminary distribution of household goods and of the $15,000 cash, "pending its finding and decision on the petition for preliminary distribution and on the objections thereto"; the court further allowed Mr. Burford, as executor, on account of his statutory fees and to his law firm, Burford, Hubler & Burford, on account of their com-

pensation, each the sum of $7,075, the will having expressly permitted both Mr. Burford, individually, and his law firm, to draw compensation for their services. The judgment of March 20 further directed him as executor ". . . to defend the estate and the interests of all persons interested in it against the action . . ." in San Mateo County and required him to take all steps "proper in his opinion to defend said action including retainer of additional counsel in San Mateo County to represent him in said action and in preparation of same for trial."

On March 23, 1962, the court filed a memorandum opinion in which it is stated that:

"IT IS THEREFORE ORDERED as follows:

"(1) Preliminary distribution to Marcia Miller Nelson and Sally Miller Field is granted as prayed for; distribution to Burke E. Burford in trust is denied.

"(2) The Executor's petition to confirm the distributions of September 8, 1961, and November 27, 1961, made without prior order of this Court, is denied.

"(3) Each of the provisions of the 'Judgment Settling First Account and Report of Executor, for Allowance on Account of Statutory Compensation and Order Instructing Executor' made March 20, 1962, is confirmed and incorporated by reference.

"(4) The attorney for the Executor shall prepare findings and judgment and submit them to all counsel five days before submitting them to the Court."

On April 2, 1962, the court made a "Minute Order Amending Memorandum Opinion" in which it was said:

". . . the preliminary distributions heretofore made shall be, and the same are approved and confirmed.

"The order shall be drawn accordingly."

On April 12, 1962, the court made the following minute order entitled "Corrected Minute Order Amending Memorandum Opinion":

"IT IS THEREBY ORDERED that said opinion be, and the same is hereby, amended to provide as follows: That the preliminary distributions heretofore made shall be, and the same are, approved and confirmed, except as to those distributions which have heretofore been made to Burke E. Burford in trust under the terms of the Will.

"The order shall be drawn accordingly."

The probate judge thereafter signed and filed a "Judgment of Preliminary Distribution," which allowed, ratified and

confirmed the informal distributions of a share of the household furniture and $5,000 in cash to Sally Miller Field and to Marcia Miller Nelson and granted a distribution of one-third of the personal property mentioned therein and in the petition for preliminary distribution to each of the two sisters, but denied any distribution to Burke E. Burford as trustee under the will; the requirement of a bond from either of the two distributees was dispensed with, and the provisions of the prior judgment settling the first account, as hereinbefore referred to, was "confirmed and incorporated by reference." The appellant by her notice of appeal has completely covered all facets of the orders and judgments by express reference to each of the successive minute orders and documents, and there is no contention that the notice of appeal was not adequate as to form. For the sake of convenience, we shall consider the appeal under two headings: first, the appeal from the judgment approving the account of the executor and giving him instructions; secondly, the judgment ordering distribution as to Miriam's two sisters and denying it as to her trustee.

The appellant does not seriously contend in this court that there is anything basically wrong with the order approving the account of the executor. The central question tendered for determination is whether the court erred in denying preliminary distribution to the trustee for a third heir while granting it to the other two.

The respondent Burford is executor as well as testamentary trustee; as executor he owes a duty to protect the estate from external attack; he also owes a duty to treat all of the beneficiaries equitably; as testamentary trustee he occupies a confidential relationship toward Miriam Hartman and must give careful and considerate attention to her needs in order to carry out the terms of the trust. As executor, he petitioned for an equal distribution in three parts; on the appeal, he seeks to justify the decision of the court that only two of the heirs should enjoy partial distribution, contrary to his own petition, and he appears here as a respondent rather than as the appellant. Miriam Miller Hartman is in a somewhat similar quandary arising out of conflicts in her position as beneficiary under the testamentary trust and as plaintiff in *Hartman v. Burford*; in this proceeding she filed objections to the proposed preliminary distribution on the ground that if she secures judgment in the pending San Mateo case, the contract claimed to have been made between her father and mother

would require the beneficiaries under the will to account to the third party beneficiaries under the alleged contract, each for an equal third of the property. But now, her position on the appeal is essentially an objection to what she claims is an inequitable partial distribution. This contention was not made by her for the first time on appeal, but was urged during the hearing below. The prayer in the San Mateo case is that the defendants therein be required to deliver to plaintiff one-third of the assets of the estate ". . . upon distribution thereof," and this presupposes the orderly distribution of the estate, irrespective of the trial of *Hartman* v. *Burford.* Sally Miller Field and Marcia Miller Nelson presumably do not wish to disregard the considered judgment of their mother in making her will, and by reason of their family relationship with their sister, they may not wish to deprive her of the benefit of the property which their mother directed to have held by the trustee.

Everyone seems to be in terror of the *in terrorem* clause. Miriam is threatened with a claim of forfeiture of her rights under the will, and if she should fail in the San Mateo case, she would not receive any property of her parents, if this theory is correct. Her two sisters and the trustee are also subject to a possible claim of forfeiture under the fifth paragraph of the will if they should formally allege that Miriam has contested the will and if such claim should be found to be incorrect; in such circumstances they would be attempting to balk the testatrix's wishes with respect to Miriam.

The only reason assigned by the trial judge for his ruling against preliminary distribution to the trustee was that it could not be ordered ". . . without the possibility of harm to certain of those interested in the estate by reason of the possibility of an issue of forfeiture of interests in said share arising from the action . . ." of *Hartman* v. *Burford.* But this rests the decision on a ground which was never made an issue in this proceeding. Neither the executor nor any other beneficiary has formally raised the question of forfeiture. The executor has expressly petitioned for partial distribution in equal shares to the trustee for the Miriam Miller Hartman trust and her two sisters; her sisters have refrained from any formal contention that Miriam has forfeited her rights under the will through the filing of the San Mateo case, and the appellant has not suggested that she be barred from any contingent recovery in the estate proceedings by virtue of the filing of the San Mateo suit. In argument and in their briefs

the parties have mentioned possibilities, but no one has had the temerity to raise the point expressly.

In *Ludwicki* v *Guerin*, 57 Cal.2d 127 [17 Cal. Rptr. 823, 367 P.2d 415], the plaintiff, Marjorie Ludwicki, daughter of decedent, Paul Guerin, and his wife Alma, brought suit against Bruce Guerin, individually, as executor of Paul's estate and as administrator of the estates of Paul's brother and mother, seeking to impress a trust upon one-half of the property in Paul's estate on the basis of an alleged contract entered into by Paul and Alma in which they agreed to make wills leaving one-half of their property to the plaintiff, and to direct Bruce, as executor, to deliver to plaintiff one-half of the property in Paul's estate remaining after administration. The trial court held that the action was barred by the provisions of the statute of limitations, and the judgment was affirmed on that ground. But the discussion of the controlling principles is directly helpful here. ■■ It is pointed out (p. 130) that such an action is one for "quasi-specific performance of the contract to make a will," that since no one can be compelled to make a will, the agreement cannot result in specific performance "in the strict sense, but under certain circumstances equity will give relief equivalent to specific performance by impressing a constructive trust upon the property which decedent had promised to leave to plaintiff." ■ The situation in that case, which parallels the present record, is thus discussed (pp. 131-132):

"When a person dies, the title to his property, real and personal, passes to the person to whom it is left in his will or who takes by intestacy, but all his property is subject to the possession of the executor or administrator for purposes of administration. (Prob. Code, § 300.) If the will creates an express trust, the legal title of the trustee and the equitable title of the beneficiary vest as of the date of death, even though the trust estate is residuary in character. (*Estate of Platt,* 21 Cal.2d 343, 347 [131 P.2d 825].) The same principle should be applied to a constructive trust based on conduct of the decedent, including failure to perform a promise to make a will. Accordingly in such a situation a constructive trust in favor of the promisee and against those who take under decedent's will or by intestacy may be imposed immediately after the date of death.

■ "*The action to impose the trust does not interfere with the proceedings in probate. It does not set forth a claim against the estate, or against the executor, or against his*

*right to possession for the purposes of administration.*
 The action is in effect a suit between a claimant under the contract and claimants under the will or by intestacy as to who is entitled to all or part of the estate, and it does not purport to interfere with the administration by the executor, who, with respect to the proceeding, is in the position of a stakeholder. (*Estate of Healy*, 137 Cal. 474, 477 [70 P. 455].)

 The executor, however, may properly be made a party defendant, as was done in this case, for the purpose of restraining him from distributing the property without regard for plaintiff's interests. (*Furman* v. *Craine*, 18 Cal.App. 41, 46-47 [121 P. 1007].)'' (Emphasis added.) (See also *Deming* v. *Drachmann*, 202 Cal.App.2d 445 [21 Cal.Rptr. 17].)

 As a matter of practice, the functions of the superior court in determining probate matters and questions of title to property have been clearly separated. This rule in California is paralleled in the judicial systems of most of our states. (169 A.L.R. 53.)

 In *Estate of Harris*, 9 Cal.2d 649, 664 [72 P.2d 873], it is expressly held that a probate court does not have jurisdiction to determine a claim that there has been an oral agreement to make wills:

". . . this question cannot be litigated in a probate court, but the remedy of a person injured by the violation of a contract to make testamentary provision for another must be pursued in a court of equity. (*Fuller* v. *Nelle*, 12 Cal.App.2d 576, 580 [55 P.2d 1248]; *Estate of Rolls*, 193 Cal. 594, 596 [226 P. 608].)''

 The opinion in *Estate of Dabney*, 37 Cal.2d 672, 676 [234 P.2d 962], points out the difference in jurisdiction between a probate court and a court of equity in this state:

"It is established law 'That the probate court has no jurisdiction to determine adverse claims to the properties of an estate in course of administration before it when asserted by a stranger to said estate. . . . [Citations.]' (*Estate of King* (1926) 199 Cal. 113, 117 [248 P. 519]), or 'to try the question of title to property as between a representative of the estate and strangers to the estate.' (*Guardianship of Vucinich* (1935) 3 Cal.2d 235, 243 [44 P.2d 567]; see also *Wilkerson* v. *Seib* (1942) 20 Cal.2d 556, 562 [127 P.2d 904]; *Stratton* v. *Superior Court* (1948) 87 Cal.App.2d 809, 811 [197 P.2d 821].) Nor is one who is claiming adversely to an estate properties which have been included in the estate bound by the probate court's order of distribution. (See *Texas Co.*

v. *Bank of America* (1935) 5 Cal.2d 35, 46 [53 P.2d 127]; *Shaw* v. *Palmer* (1924) 65 Cal.App. 441, 446-449 [224 P. 106], and cases there cited.)

''The same general principle—that one over whose claims the probate court has no jurisdiction is not bound by that court's adjudications—has also found expression in cases dealing with rights to estate properties based on asserted contracts by the decedent to make a particular testamentary disposition. (See *Estate of Cropper* (1947) 83 Cal.App.2d 105, 108 [187 P.2d 780]; *Estate of Harris* (1937) 9 Cal.2d 649, 664-665 [72 P.2d 873]; *Fuller* v. *Nelle* (1936) 12 Cal. App.2d 576, 580 [55 P.2d 1248].) In *Estate of Cropper* an appeal from an order of partial distribution, taken by one who had instituted an independent suit in equity to enforce a trust upon estate properties based upon an alleged contract by decedent to leave a will in appellant's favor, was dismissed on the ground that since appellant 'was not a party to the proceeding . . . for partial distribution and her rights are in no manner affected thereby, she is not aggrieved by the order and has no right to appeal therefrom.' Appellant's rights were characterized by the court as being asserted 'adversely to the estate.' (Pp. 107, 108, of 83 Cal.App.2d.)''

In *Estate of Rolls*, 193 Cal. 594, 599-600 [226 P. 608], it is said: ''The remedy of a person injured by the violation of a contract to make testamentary provision for another must be pursued in a court of equity and not in a court of probate.

Courts of equity will interfere in the administration of estates where the powers of the courts of probate and their modes of procedure preclude them from doing complete justice and then only for the purpose of rendering indispensable aid to courts of probate, remitting their decrees to that court to be carried into effect. (3 Redfield on the Law of Wills, sec. 20, p. 305.) The case of *Monsen* v. *Monsen*, 174 Cal. 97 [162 P. 90], was a suit in equity to enforce an alleged contract by which the decedent had agreed that the plaintiff should receive and inherit a child's share of the property which decedent might leave. It was there said: 'The action is of a type familiar in this court, and illustrated by a line of decisions beginning with *Owens* v *McNally*, 113 Cal. 444 [45 P. 710, 33 L.R.A. 369]. As was said in that case, ''there has been from a very early date a general concurrence among the authorities upon the proposition that a man may make a valid contract binding himself to dispose of his property in a

particular way by last will and testament, and a court of equity will enforce such an agreement specifically by treating the heirs as trustees and compelling them to convey the property in accordance with the terms of the contract.'' Without referring to the numerous decisions in other jurisdictions, we make note of the cases in which the rule, as thus declared, has been recognized here. (*McCabe* v. *Healy*, 138 Cal. 81 [70 P. 1008]; *Baumann* v. *Kusian*, 164 Cal. 582 [129 P. 986, 44 L.R.A. N.S. 756]; *Rogers* v. *Schlotterback*, 167 Cal. 35 [138 P. 728]; *Blanc* v. *Connor*, 167 Cal. 719 [141 P. 217].)' To this list may be added *Osborn* v. *Hoyt*, 181 Cal. 336 [184 P. 854]; *Estate of Ross*, 180 Cal. 651 [182 P. 752]; *Estate of Ross*, 185 Cal. 8 [195 P. 674]; *Roy* v. *Pos*, 183 Cal. 359 [191 P. 542]; *Steinberger* v. *Young*, 175 Cal. 81 [165 P. 432].)'' (See also *Schlyen* v. *Schlyen*, 43 Cal.2d 361, 372 [273 P.2d 897]; *Sears* v. *Rule*, 27 Cal.2d 131, 139-140 [163 P.2d 443]; 3 Page on Wills, Bowe-Parker revision, § 26.82, pp.171-172.)

The *in terrorem* clause provides the penalty of forfeitures as against anyone who ''. . . shall contest in any court any of the provisions of this instrument. . . .'' It will be noted that the clause appears to be narrower in scope than many similar provisions in other wills; the key word is *contest;* if the words employed by the testatrix refer only to a *contest* of the will, as distinguished from opposition to the effect of some provision of the will, it would be clear that the *in terrorem* clause could not be invoked against Miriam. ''Contest of a will'' is a term of art, the connotation of which is made clear in the context of the appropriate Probate Code sections. Article I of chapter 2 in division 3 of the Probate Code is entitled ''Contests Before Probate.'' Section 370 of the Probate Code provides that ''Any person interested may contest the will by filing written grounds of opposition to the probate thereof at any time before the hearing of the petition for probate, . . .'' Section 371 of the Probate Code provides in part: ''Any issue of fact involving the competency of the decedent to make a last will and testament, the freedom of the decedent at the time of the execution of the will from duress, menace, fraud, or undue influence, the due execution and attestation of the will, or any other question substantially affecting the validity of the will, . . .'' are the questions to be answered in connection with a contest before probate.

Similarly, article II of chapter 2 of division 3 of the Probate Code, entitled ''Contests After Probate'' (Prob. Code,

§ 380), provides: "When a will has been admitted to probate, any interested person, . . . may, at any time within six months after such probate, contest the same or the validity of the will." The time to file any contest of the will, as provided by the Probate Code, has elapsed, and no contest has ever been filed or can ever be filed hereafter. (*Estate of Plaut*, 27 Cal.2d 424, 428-429 [164 P.2d 765, 162 A.L.R. 837]; *Estate of Caruch*, 139 Cal.App.2d 178, 185 [293 P.2d 514].)

The right to contest a will is statutory in nature and exists only to the extent given by the code. (*Estate of Baker*, 170 Cal. 578, 585 [150 P. 989]; *Estate of Sankey*, 199 Cal. 391, 403 [249 P. 517]; *Estate of Bily*, 96 Cal.App.2d 333 [215 P.2d 78, 15 A.L.R.2d 861]; *Estate of Walters*, 99 Cal. App.2d 552 [222 P.2d 100].) A will contest is in the nature of a proceeding in rem. (*Estate of Sankey, supra*; *Estate of Golden*, 9 Cal.2d 647 [72 P.2d 113]; *Voyce* v. *Superior Court*, 20 Cal.2d 479, 483 [127 P.2d 536].)

The court has refused preliminary distribution to the testamentary trustee on the sole ground that someone may possibly file and litigate a claim that Miriam has forfeited her rights under the will. Such contention has not been made, and it may never be made. The timely administration of an estate should not be delayed because of the mere *possibility* that some future event might affect the rights of a distributee. Thus, ". . . the distribution of an estate should not be delayed upon the mere suggestion that a civil action might be brought" (*Estate of Morelli*, 102 Cal.App.2d 39, 43 [226 P.2d 716]); and ". . . the distribution of estates cannot be delayed in order to await the determination of prospective litigation by adverse claimants to the properties or any portion thereof of an estate when the same is otherwise ready for distribution." (*Estate of King*, 199 Cal. 113, 119 [248 P. 519].)

In *Estate of Hart*, 151 Cal.App.2d 271, 280 [311 P.2d 605], it is said: "We are aware of no authority holding that the court sitting in probate is precluded from making a distribution of a devise containing a condition subsequent on the ground that the devisee, subsequent to a distribution of the estate, may be prohibited from the performance of the condition."

It may well be that after a thorough study of the situation in the light of the law and the facts no interested party will take the position that Mrs. Hartman has forfeited her testamentary rights.

As stated in *Lobb* v. *Brown*, 208 Cal. 476, 492 [281

P. 1010], forfeiture provisions in a will must be strictly construed and foreiture avoided if reasonably possible; it is only where the acts of a party come strictly within the express terms of the punitive clause that a breach may be declared.

The policy against forfeitures is so strong that our courts, following the universal rule in this country, insist upon a clear and unequivocal attack upon the will before invoking the penalty contained in the *in terrorem* clause; this is true even when the language of the clause in question is clearly broader in its connotation than the present restriction. (See *Clark* v. *Hefley,* 34 Tenn.App. 389 [238 S.W.2d 513]; *Estate of Kline,* 138 Cal.App. 514 [32 P.2d 677]; *Estate of Seipel,* 130 Cal.App. 273 [19 P.2d 808]; *Estate of Dow,* 149 Cal. App.2d 47 [308 P.2d 475]; *Estate of Hill,* 176 Cal. 619 [169 P. 371]; *Estate of Crisler,* 97 Cal.App.2d 198 [217 P.2d 470]; 49 A.L.R.2d 204; 4 Witkin, Summary of California Law, Wills and Probate, § 244, pp. 3232-3233.)

The equitable precept, "Equality is equity," is a rule of fair play, the principle involved in the maxim should control here. We know of no sound reason why the preliminary distribution, good as to the two sisters of appellant, should not also be ordered in favor of her trustee.

The judgment insofar as it relates to preliminary distribution is reversed with directions to the court below to order such distribution as prayed in the petition for preliminary distribution in equal shares to each of the two sisters and to the testamentary trustee for Miriam Hartman.

The judgments and orders are otherwise affirmed. The appellant shall recover her costs on appeal.

Brown, J., concurred.

Stone, J., being disqualified, did not participate.